# New Castle Electric Company, Appellant, *v.* Public Service Commission.

*Corporations—Merger—Electric light companies—Powers—Certificate of public convenience—Supplying street railway company—Recording charter for Public Service Commission.*

Where an electric light company is created on December 30, 1913, under the Merger Act of May 3, 1909, P. L. 408, by the merger of several electric light companies, and one of these companies is chartered on May 6, 1913, to serve light to a particular township, and the consolidated company immediately after its incorporation begins to supply light in the township in question, it is not necessary for the consolidated company to secure a certificate of public convenience permitting it to do business in such township. It is immaterial that its only customer in such township is a street railway company, and it is also immaterial that the company chartered to serve light in the township had not recorded its charter until July 28, 1913, two days after the passage of the Public Service Act, inasmuch as such act did not become operative until January 1, 1914, which was subsequent to the date of the incorporation of the consolidated company.

Argued Dec. 6, 1917. Appeal, No. 106, Oct. T., 1917, by plaintiff, from order of Public Service Commission Complaint, No. 475, 1915, dismissing complaint in case of New Castle Electric Company v. Public Service Commission. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Complaint by the New Castle Electric Company against the Harmony Electric Company to prevent the latter from supplying electric light in Shenango Township.

From the record it appeared that the Harmony Electric Light Company was incorporated on December 30, 1913, under the Merger Act of May 3, 1909, P. L. 408, by the merger of several electric light companies. One of these companies was the Shenango Electric Company, incorporated on May 6, 1913, to supply light, heat and power by means of electricity in Shenango Township. This company did not record its charter until July 28, 1913, two days after the passage of the Public Service Act. The commission found as a fact that on December 31, 1913, the Harmony company was supplying light in Shenango Township to the Pittsburgh, Harmony, Butler and New Castle Railway Company in Shenango Township from a plant in Harmony which it had leased from the street railway company. At this time the street railway company was the only customer of the Harmony company. Some time after January 1, 1914, the Harmony company proceeded to extend its poles and wires into Shenango Township for the purpose of supplying electric light generally in the township. It did this without having obtained a certificate of public convenience.

The Public Service Commission dismissed the complaint.

*Error assigned* was the order of the commission.

*Ralph J. Baker,* with him *Douglass D. Storey,* for appellant.—Neither of respondent's constituent companies for Wayne or Shenango Townships were organized until after the passage of this Act on July 26, 1914. The charters of these companies were not recorded until after that date and they did not exist as corporations until that was done: Guckert v. Hacke et al., 159 Pa. 303; Braddock Borough v. Penn Water Co., 189 Pa. 379; Re

Relief Electric, Etc., Co.'s Petition, 63 Pa. Superior Ct. 1; Jenkins Township v. Pub. Service Commission, 65 Pa. Superior Ct. 122.

The use of the powers or franchises of one constituent electric company, confined entirely to the district of that company, by a consolidated company, is not a use or exercise of the powers or franchises of another constituent electric company whose district is many miles distant: Citizens Elec. Illum. Co. v. Lack. & Wyom. Val. Power Co., 255 Pa. 145; Motter v. Kennett Twp. Elec. Co., 212 Pa. 613; Kane, Etc., R. Co. v. Pittsburgh, Etc., R. R. Co., 241 Pa. 608; Balt. & Susquehanna R. R. Co. v. Musselman, 2 Grant 348; Branch v. City of Charlestown, 92 U. S. 677; Gould v. Langdon, 43 Pa. 365.

*Walter Lyon,* with him *J. Norman Martin,* for appellee, cited: Southwark Bank v. Com., 26 Pa. 446; Wartman v. Philadelphia, 33 Pa. 202.

*Berne H. Evans,* for Public Service Commission.

OPINION BY KEPHART, J., July 10, 1918:

The Harmony Electric Company was formed December 30, 1913, by a merger of twenty-six companies, one of which was the Shenango Electric Company, incorporated May 6, 1913, for Shenango Township. The consolidated company, after the merger, proceeded to supply customers in this township from a power station in Jackson Township. The New Castle Electric Company had been serving the public in this township and the City of New Castle for twenty years or more. It had a large investment in its plant and filed a complaint protesting against this move of the Harmony Company. It was similar to that filed in the Pennsylvania-Lehigh case just preceding.

The commission found as a fact that the Harmony Company, on the 31st of December, 1913, supplied light, heat and power by means of electricity to the public in the several municipalities named in the charters of the com-

panies merged into the Harmony company "and was supplying electric current for power and lighting purposes in Shenango Township." The commission concluded that it was not necessary for the Harmony company to secure a certificate which would permit it to do business generally in Shenango Township. They held that the extent of the business engaged in was an effort in good faith on its part to prosecute its work as required by law and that its service, extending over a number of townships, although furnished to but one company, was a service in good faith; and as it was a going concern before the act became effective, a certificate of public convenience was not required. Appellant argues there is no evidence to support this finding. The Harmony company leased, on December 30, 1913, from a street railway company, its large power station in Jackson Township and its transmission lines in this and other townships. These lines were built and being operated by the street car company before this lease was executed. It appeared that the electric company had but one customer, and that was the street railway company, and sold to it a large part of its current. We discussed, in the Pennsylvania-Lehigh case, the effect of the merger act. The conclusions of the commission in the case now before us are such that any change therein because of a difference of the opinion that we might have would be but a substitution of our judgment for that of the commissions. We can, however, see no logical difference between serving one customer or one hundred customers when all acts are in good faith. As testing the bona fides of the company, under circumstances such as here presented, such an act might be seriously questioned from the standpoint of public policy; that is, an attempt by this means of a street railway company to engage in a lighting and power business.

It is urged, however, that when the Public Service Act was passed (July 26th) the Shenango company had not recorded its charter, and when the charter was recorded the provisions of the law were included therein with the

same effect as though it had been secured after January 1, 1914. The reason advanced being that until the charter was recorded it was not a corporate body and the Public Service Act, passed prior to that date, took away from it no right that it possessed and this law must, therefore, be considered part of its charter. The Public Service Act, however, did not become effective until January 1, 1914. It did not affect charters secured subsequent to its passage and prior to January 1, 1914, as it relates to this question. When the company recorded its charter, it could have engaged in the business of supplying electricity in that township without further authority. There was no commission in existence which had power to issue a certificate of public convenience. Before January 1, 1914, it merged into a company covering a larger field and that company, according to the commission, immediately engaged in business. When the merger was effective, the Shenango company ceased to exist as such. The new corporation succeeded (or supplanted) it, and the question here discussed must be considered under the public service law as affecting the new company. We have discussed this in the Pennsylvania-Lehigh case.

The cases referred to by the appellant do not control.

The order of the commission is affirmed at the cost of the appellant.