## J. A. WALDO v. G. L. DENTON ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF McKEAN COUNTY.

Argued May 6, 1890—Decided May 19, 1890.

When a party to a common-law action had his day in court, and was not
deprived of his right to be heard by any fraud, stratagem or deceit of
his adversary, the enforcement of the judgment rendered against him
will not be restrained by an injunction in equity.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MC-
COLLUM, JJ.

No. 29 January Term 1890, Sup. Ct.; court below, No. 2
October Term 1889, C. P. in Equity.

To the number and term of the court below, J. A. Waldo
filed a bill in equity against George L. Denton and Thomas
Chattle, praying upon the averments therein contained, suffi-
ciently appearing in the opinion of the court below, that the
defendants be restrained by injunction, preliminary until final
hearing and then to be made perpetual, from enforcing the col-
lection of a judgment entered on October 23, 1888, in favor of
the defendants in the bill against the plaintiff in the bill, for
the sum of $402.96.

After hearing had upon affidavits filed by the parties, the
court, OLMSTED, P. J., filed the following opinion:

George L. Denton and Thos. Chattle commenced an action
in the Court of Common Pleas of McKean county against
J. A. Waldo. The action was assumpsit and was brought to
No. 389 October Term 1886. This action was tried before a
jury and a verdict was rendered in favor of the plaintiffs for
the sum of $402.96.

It appeared on the trial that on October 4, 1884, Denton and
Chattle sold to one Riley the cherry and ash stumpage from
certain lands owned by them at $5 per 1000, they to have a
lien upon the manufactured lumber until the stumpage was
paid for. Riley went on under this purchase and cut and drew

Opinion of Court below.

to the mill some 50,000 or 60,000 feet of the timber. Then it appeared that another agreement was entered into between them and J. A. Waldo, by which Waldo was to furnish supplies to Riley, and was to take possession of and sell the lumber, and pay Chattle and Denton for the stumpage and reimburse himself for his advances from the proceeds. It was contended by the plaintiffs that Waldo's agreement was that they were to be first paid for the stumpage from the proceeds by Waldo. On the other hand, it was contended by Waldo that his disbursements were to be paid first, and that Chattle and Denton's claim was postponed till he was fully reimbursed. It was quite apparent that the proceeds were not sufficient to pay all; that is, not sufficient to pay the stumpage contract in full and all of the disbursements.

The case was No. 11 upon a list for trial at a term in October, 1888. It was reached on Monday evening of the term, the previous cases having been tried, settled, or continued. When the case was reached, Messrs. Mullin & McClure appeared for the plaintiffs, and Mr. Hastings, of the firm of Lee, Criswell & Hastings, appeared for the defendant. It was then stated that Mr. Chapman was interested in the case, and that he and Waldo and other witnesses would be in attendance at the sitting of the court on Tuesday morning, ready for the trial. The court then adjourned. At the convening of the court on Tuesday morning, Waldo was not in attendance. A jury was called and the case proceeded with, Mr. Hastings stating that his client and Mr. Chapman would come on a train from Bradford that would arrive soon after 10 o'clock. The case was gone through for the plaintiffs by the testimony of one or two witnesses, and the plaintiffs rested. The case was then held for a time waiting for the defendant. When the train arrived the defendant came with witnesses. His side of the case was then gone through. Nothing whatever was said after Waldo's arrival about the absence of Mr. Chapman. The plaintiffs' witnesses were called back and further cross-examined; the defendant and other witnesses were sworn and examined at great length by Mr. Hastings, and a full, careful and painstaking trial was had. When the jury came in with their verdict in the afternoon, Mr. Chapman appeared and asked to have the case heard further; this the court declined, saying if he

Opinion of Court below.

had a remedy it could be reached by a motion for a new trial. The verdict of the jury was taken and it seemed to be justified by the evidence. A motion for a new trial was made, and a rule to show cause was granted; this rule after hearing was discharged.

It may be that a new trial should have been granted by the court, but we were not satisfied that the additional evidence would have produced a different result if it had been heard by a jury. Parol evidence of the contents of the written agreement was excluded by the court, but in some way the parties all testified as to their understanding of what it meant or intended; and moreover, to grant a new trial under such circumstances would have been notice to all suitors that they could have their own time if not their own way, in the trial of a case, and would have been the practical end of the effort of the court to require parties to have their cases ready for trial when reached upon the list.

The trial was a fair one. The defendant was well and ably represented by Mr. Hastings, and under all the circumstances we think the defendant was not injured by the refusal to grant a new trial. We are now asked to issue an injunction to restrain the plaintiffs in that action (and defendants in this one) from proceeding to collect the judgment entered upon the verdict of the jury. It seems to us very clear, from an examination of all the authorities at our command, upon this question, that we have no such power. The plaintiff has had his day in court; he has had his opportunity to be heard and he has not been deprived of it by any fraud, stratagem or deceit of his adversary. There can be no relief in equity where the party has had a trial or an opportunity for a trial in which he might have availed himself of his equities: Wistar v. McManes, 54 Pa. 326; Brightly's Eq., 442; Eyster's App., 65 Pa. 475; Cheyney v. Wright, 7 Phila. 431; Hetzell v. Bentz, 8 Phila. 261; Gordonier's App., 8 Ill. 528; Stephens v. Stephens, 1 Phila. 108; Frauenthal's App., 100 Pa. 290; Maher's App., 1 Pa. S. C. Dig. 84.

We have been asked, if we refused the injunction in this case, to order the money collected by the sheriff into court, to be held until the determination of the case in the Supreme Court. We know of no such practice and have no such power, when an injunction is refused.

Statement of Facts.

—A decree having been entered refusing the injunction prayed for, the plaintiff took this appeal assigning the decree as error.

*Mr. John B. Chapman* (with him *Mr. W. B. Chapman*), for the appellant.

Counsel cited: Cochran v. Eldridge, 49 Pa. 370; High on Injunctions, § 116; Vather v. Zane, 6 Gratt. 246; Stockdale v. Ullery, 37 Pa. 488; 2 Story's Eq. J., ed. 1861, §§ 879–80. 887; Bispham's Eq., § 407.

There was no appearance for the appellees.

PER CURIAM:

This was an appeal from the decree of the court below denying to the plaintiff a preliminary injunction. As we do not discuss such cases, we will merely say that we see no reason why the decree should be disturbed.

> Decree affirmed, and the appeal dismissed, at the costs of the appellant.